Case Nos. 15-5698, 15-5699, 15-5711

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

_____

BANK OF AMERICA, N.A., as a successor by merger to LaSalle Bank, N.A.;
SMA ISSUER I Bank of America, N.A.,

*Plaintiff-Appellees*,

THE DOMAINE DE LA RIVE CONDOMINIUM COUNCIL OF CO-OWNERS,
INC.

*Intervenor Plaintiff-Appellee*,

v.

CORPOREX REALTY & INVESTMENT CORPORATION,

*Defendant-Appellant*,

and

CPX OLYMPIC BUILDING II, LLC; CPX MADISON PLACE OFFICE, LLC,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the Eastern District of Kentucky, Covington Division
The Honorable David L. Bunning, U.S. District Judge

_____

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**

Earl K. Messer
Robert B. Craig
John B. Nalbandian
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202
Phone:  (513) 381-2838
Fax:      (513) 381-0205
Email:  messer@taftlaw.com
            craigr@taftlaw.com
            nalbandian@taftlaw.com

Robert L. Rocke
Raul Valles
Rocke, McLean & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, Florida  33629
Phone:  (813) 769-5600
Fax:      (813) 769-5601
Email: rrocke@rmslegal.com
            rvalles@rmslegal.com

**Counsel for Defendants-Appellants**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 2

I.   The PNLs do not bar Corporex's claims or defenses. ....................... 2

    A.   The PNLs lack consideration ..................................................... 3

    B.   BOA fraudulently induced Corporex to sign the PNLs. ........... 4

        1.   BOA misled Corporex. ......................................................... 4

        2.   Corporex reasonably relied on BOA's misrepresentations. ............... 6

II.  Even if the PNLs are enforceable, the release language does not bar claims and defenses based upon conduct that BOA actively concealed. .......... 11

III. There is a genuine issue of material fact regarding Madison's default ............ 13

IV.  BOA incorrectly contends that Realty has no defense to enforcement of the Madison loan. ......................................................... 14

V.   Disputed issues of material fact exist on Olympic's and Madison's breach of contract claim based upon the implied duty of good faith and fair dealing. ........................................................... 16

    A.   Breach of an express provision of a contract is not a prerequisite of a breach of the implied duty of good faith and fair dealing ................ 16

    B.   BOA acted inconsistent with its contractual rights. ................ 17

VI.  There exist disputed issues of material fact regarding Olympic's promissory estoppel claim. .............................................. 18

    A.   The Parol Evidence Rule does not bar Olympic's counterclaim. ............ 18

    B.   The reasonableness of Olympic's reliance on BOA's promise to negotiate is a disputed question of material fact. ..................... 19

    C.   There was ample evidence from which a jury could conclude that BOA determined to sell the loans in the third quarter of 2010. ........ 21

VII. The trial court erred in denying Corporex's motion for leave to amend. ...... 22

    A.   Corporex acted diligently. .................................................. 22

B.    BOA will not be prejudiced by the amendment. ......................................25

CONCLUSION .................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

EXHIBIT A

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Anderson*,
  848 F.2d 104 (8th Cir. 1988) ................................................................15

*Atkinson v. Akron Bd. of Edn.*,
  2006 WL 551551 (Ohio Ct. App. Mar. 8, 2006) ......................................... 20, 21

*Bank of Am., N.A. v. Corporex Realty & Inv., LLC,*
  875 F. Supp. 2d 689 (E.D. Ky. 2012) .......................................................... 16, 21

*Bilbaran Farm, Inc. v. Bakerwell, Inc.*,
  993 N.E.2d 795 (Ohio Ct. App. 2013)................................................................16

*Black v. Albery*,
  106 N.E. 38 (Ohio 1914) .....................................................................15

*Boulton v. Swanson*,
  795 F.3d 526 (6th Cir. 2015) ......................................................... 24, 25

*Buckeye Fed. Sav. & Loan Ass'n v. Guirlinger*,
  581 N.E.2d 1352 (Ohio Ct. App. 1991)................................................................16

*Bushman v. MFC Drilling Inc.*,
  1995 WL 434409 (Ohio Ct. App. July 19, 1995) .................................................16

*Chase Bank of Ohio v. Brookstone Ohio Partnership*,
  1990 WL 20104 (Ohio Ct. App. Mar. 5, 1990) ...................................................15

*Chase Bank of Ohio v. Brookstone Ohio Partnership*,
  1990 WL 20104 (Ohio Ct. App. Mar. 5, 1990) ...................................................15

*Creson v. Carmody*,
  222 S.W.2d 935 (Ky. 1949)................................................................12

*Crown Life Ins. v. Hicks*,
  1994 WL 16808768 (E.D. Mich. Jan. 7) ..............................................................15

*Current Source, Inc. v. Elyria City Sch. Dist.*,
  813 N.E.2d 730 (Ohio Ct. App. 2004)................................................................20

iii

*Cuthbert v. Trucklease Corp.*,
  2004 WL 1879023 (Ohio Ct. App. Aug. 24, 2004)...............................................19

*Davis v. Siemens Med. Solutions USA*,
  2007 WL 710133 (W.D. Ky. Mar. 6, 2007) ...........................................................8

*Dodd v. Dyke Indus., Inc.*,
  2008 WL 1884081 (W.D. Ky. Apr. 28, 2008)..........................................................8

*Ed Schory & Sons, Inc. v. Society Nat'l Bank*,
  662 N.E.2d 1074 (Ohio 1996) ...............................................................................19

*Florence Urgent Care v. Healthspan, Inc.*,
  445 F. Supp. 2d 871 (S.D. Ohio 2006) ..................................................................17

*Forry, Inc. v. Neundorfer, Inc.*,
  837 F.2d 259 (6th Cir. 1988) ................................................................................12

*Gentry v. Harborage Cottages-Stuart, LLP*,
  2008 WL 1803637 (S.D. Fla. Apr. 21, 2008) ........................................................10

*Gianetti v. Teakwood, Ltd.*,
  2016-Ohio-213 (Ohio Ct. App. Jan. 21) ...............................................................17

*Harralson v. Monger*,
  206 S.W.3d 336 (Ky. 2006).....................................................................................20

*In re Vargas Realty Enters.*,
  440 B.R. 224 (S.D.N.Y. 2010)..................................................................................7

*Isroff v. Westhall Co.*,
  1990 WL 15192 (Ohio Ct. App. Feb. 21, 1990)....................................................12

*Jacobs v. Jacobs*,
  2008 WL 828079 (N.D. Ohio Mar. 26, 2008) .......................................................12

*Leitner v. Hawkins*,
  223 S.W.2d 988 (Ky. 1949) ....................................................................................11

*Leslie v. Grupo ICA*,
  198 F.3d 1152 (9th Cir. 1999) ...............................................................................14

*Liquidating Midland Bank v. Stecker*,
179 N.E. 504 (Ohio Ct. App. 1930)........................................................15

*Littlejohn v. Parrish*,
839 N.E.2d 49 (Ohio Ct. App. 2005)........................................ 16, 17, 18

*Lucarell v. Nationwide*,
44 N.E.3d 319 (Ohio Ct. App. 2015)....................................................17

*Mansfield Square, Ltd. v. Big Lots, Inc.*,
2008 WL 5159930 (Ohio Ct. App. Dec. 9, 2008) ................................21

*McCroskey v. State*,
456 N.E.2d 1204 (Ohio 1983) ..............................................................20

*McDonald v. Robertson*,
104 F.2d 945 (6th Cir. 1939) ..................................................................4

*Meyers v. Monroe*,
226 S.W.2d 782 (Ky. 1950)..................................................................20

*O'Brien v. Ravenswood Apartments, Ltd.*,
862 N.E.2d 549 (Ohio Ct. App. 2006.)................................................15

*Ohio Willow Wood Co. v. ALPS S., LLC*,
2010 WL 522829 (S.D. Ohio Feb. 8, 2010) ........................................24

*Panagouleas Interiors, Inc. v. Silent Partner Group, Inc.*,
2002 WL 441409 (Ohio Ct. App. Mar. 22, 2002) ...............................18

*Radioshack Corp. v. ComSmart, Inc.*,
222 S.W.3d 256 (Ky. Ct. App. 2007) .....................................................9

*Rivermont Inn, Inc. v. Bass Hotels & Resorts Inc.*,
113 S.W.3d 636 (Ky. Ct. App. 2003) ...................................................10

*Sellars v. Jones*,
175 S.W. 1002 (Ky. 1915).......................................................................4

*Shockley v. City of Newport News*,
997 F.2d 18 (4th Cir. 1993) ..................................................................14

*Slidell, Inc. v. Millennium Inorganic Chems., Inc.*,
    460 F.3d 1047 (8th Cir. 2006) ...............................................................15

*Source Associates, Inc. v. Valero Energy Corp.*,
    273 F. App'x 425 (6th Cir. 2008)...........................................................7

*State ex rel. Wallace v. State Med. Bd. of Ohio*,
    732 N.E.2d 960 (Ohio 2000) ................................................................16

*Wade v. Werner Trucking Co.*,
    2014 WL 1091707 (S.D. Ohio Mar. 18, 2014)......................................14

*Wade v. Werner Trucking Co.*,
    2014 WL 1091707  (S.D. Ohio Mar. 18, 2014)......................................14

*Waksman v. Cohen*,
    2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002).......................................11

*White v. Grinfas*,
    809 F.2d 1157 (5th Cir. 1987) .............................................................11

*Woods v. Capital Univ.*,
    2009 WL 3465827 (Ohio Ct. App. Oct. 27, 2009)................................19

**Statutes**

42 U.S.C. § 1983....................................................................................25

K.R.S. 411.184(2) ..................................................................................26

Ohio Rev. Code § 1301.304....................................................................17

**Other Authorities**

The Restatement of the Law 2d, Contracts (1981), Section 205 ..............17

## INTRODUCTION

BOA asserts that this is a simple case. And although it may have started that way, evidence obtained from BOA reveals a complex case of deception. Now, if anything is simple, it is Corporex's right to a trial on that deception, which was designed to force loan maturity defaults to avoid Corporex's unique rights of first refusal. Tellingly, Judge Merryday in Florida thought that BOA's fraudulent conduct was clear enough that he denied summary judgment on nearly the same factual record at issue here. And that is the key; this is a summary judgment appeal. BOA's brief makes arguments more suited to a post-trial closing argument than to a summary judgment appeal. But the question here is whether a reasonable jury could agree with Corporex. BOA's own arguments show that one could.

As Corporex demonstrated in its opening brief, BOA's motivation was clear – circumvent Corporex's rights of first refusal. Those rights made it difficult for BOA to negotiate loan sales because prospective purchasers would know that any deal would be subject to Corporex's right to purchase the loan. And make no mistake, BOA's denial of those rights of first refusal proved costly to Corporex. BOA sold the Tampa and Olympic loans at significant discounts that it should have offered to Corporex. And although the Madison loan was originally included for

sale in a loan portfolio but never actually sold, the evidence showed that BOA was prepared to take a large discount on it as well.[1]

The cornerstone of BOA's strategy was to pretend to engage in loan extension negotiations to induce Corporex to miss upcoming maturity dates. This is what the evidence shows and, at a minimum, what a rational jury could find. Attached as Exhibit A to this brief is a timeline summarizing the evidence of BOA's deceptive conduct.[2]

The district court erred in granting summary judgment. There are disputed issues of material fact, and this Court must reverse.

## ARGUMENT

### I.    The PNLs do not bar Corporex's claims or defenses.

The PNLs were key to BOA's strategy and are the focal point of this appeal. Leading Corporex to believe it would, in good faith, negotiate loan extensions, BOA urged Corporex to pass other refinancing opportunities and sign the PNLs. Simultaneously, internal BOA documents demonstrate that it had no interest in extending the loans. That lack of interest came clear once the PNLs were in place and technical defaults had removed the troublesome rights of first refusal. The

---

[1] Heekin Depo., R.232-42, PageID #4938, 267:23-268:9; *id.*, PageID #4950, 313:7-17; *id.*, PageID #4951, 319:25-320:5; Spreadsheet, R.251-22, PageID#5812.

[2] Corporex has counted the words in Exhibit A against its overall limit.

district court found, as a matter of law and contrary to Judge Merryday's conclusion, that the PNLs bar nearly all of Corporex's claims and defenses. Those letters, however, are unenforceable.

### A.    The PNLs lack consideration.

To support its consideration argument, BOA points to two supposed promises: (1) it would release Corporex from claims BOA might have, and (2) it would forebear from foreclosing while negotiations were ongoing. (BOA Br. 28.) Neither works.

BOA's release argument makes no sense. BOA says "there is no doubt" that it had a good faith basis to believe that a claim, "such as a fraud claim," *against* Corporex might arise from the negotiations because "Obligors are asserting just such a claim against BOA here." (BOA Br. 30.) But Corporex's fraud claims against BOA do not create, for BOA, corresponding "fraud" claim against Corporex. And to this day, BOA can still not identify a claim that it had to release, other than the loan default claims that the PNLs preserved. (Corporex Br. 28-29.)

BOA's forbearance argument fares no better. BOA claims that such an agreement "may be inferred" from the circumstances. (BOA Br. 30.) But BOA cites no record evidence in support. Nor does BOA explain how such an alleged promise was even possible since the PNLs stipulated that BOA could foreclose *at*

*any time*.[3] And even if a promise to forebear could be "inferred," that inference is for a jury to make. Tellingly, BOA's principal case supporting its inference argument, *Sellars v. Jones*, 175 S.W. 1002 (Ky. 1915), involved a post-trial challenge to a jury instruction.

**B.    BOA fraudulently induced Corporex to sign the PNLs.**

**1.    BOA misled Corporex.**

BOA argues that there is "no evidence in the record" that it made any misrepresentations to Corporex about its intent to extend the loans. (BOA Br. 41.) But the record is clear—while telling Corporex it would negotiate to extend the loans, BOA internally had already decided to do something else. (*See* Exhibit A.) Typically, fraud is proven circumstantially. *See*, *e.g.*, *McDonald v. Robertson*, 104 F.2d 945, 947 (6th Cir. 1939) ("Fraud usually is clothed in secrecy and deceit and its existence in many cases can be deduced only from circumstantial evidence"). That is not true here, where BOA's own documents contradict its representations.

In late 2010, BOA found itself with loan documents that gave Corporex rights of first refusal in the event of a loan sale. The provisions, negotiated by BOA's predecessor, were contrary to BOA's policy not to sell loans to borrowers.

---

[3] BOA says that its reservation applied "if discussions failed," but that's not what the PNLs say. (PNL, R.232-19, Page ID#4624-25, ¶¶2, 3.)

4

(Fuszard Depo., R.251-4, PageID #5653-4, 358:14-359:4.) Such rights, obviously, make it more difficult to sell an asset. And if BOA was intent upon packaging a portfolio of loans to sell together—which in fact it did with these loans—rights of first refusal effectively made that impossible.

But there was a mechanism that BOA could use to rid itself of the troublesome first refusal rights (a right that BOA officials knew prohibited a sale until the loans were in default.) (Katunas Depo. R.251-16, PageID #5780, 211:3-212:11.) And, as the attached Exhibit shows, BOA officials set out to do just that. They told Corporex (i) not to pursue alternative financing from another lender, (ii) it could negotiate an extension of the Madison loan, and (iii) not to worry about the formal default notice BOA sent on Madison because BOA could negotiate an extension with Madison.

At the same time, BOA made a secret, internal decision, reflected in a November 2010 email (before Corporex signed the PNLs and before any purported defaults) to move the status of the loans to "Out," defined to mean "credit exposure is unacceptable at any level." The fact that "Out" means what it says—BOA intended to end the relationship— is confirmed by a separate designation, "decrease," which contemplates maintaining the relationship, albeit with decreased credit exposure. BOA's communications with Corporex were consistent with

"decrease," but inconsistent with ending its credit exposure to Corporex under its "Out" designation.

BOA ignores most of these facts. On the subject of "Out," it makes one of its many jury arguments, namely, that the factfinder should disregard the plain reading of "Out" because loan modification negotiations with Corporex might have eventually resulted in a payout, which BOA claims would be consistent with the "complete payout" mentioned under the "Out" designation. (BOA Br. 40.) Under that logic, essentially every loan extension would qualify as a complete payout and an "Out" designation would be meaningless.

BOA dismisses the rest of its internal statements as "contingency plans." (BOA 41.) Another jury argument. For now, inferences must be drawn in Corporex's favor. Indeed, regardless of inferences, the pattern outlined above is stark, consistent, and clear and convincing. Judge Merryday found material issues of fact on this evidence and rejected summary judgment. The district court erred in not doing the same.

## 2. Corporex reasonably relied on BOA's misrepresentations.

BOA's position on reliance rests entirely upon a cynical twist. Having just finished arguing that its promise to negotiate was good and adequate consideration for the PNLs (BOA Br. 46), BOA reverses field and says it was unreasonable for Corporex to rely upon that same promise. (BOA Br. 52.) BOA cannot have it both

ways. Either its promise was illusory (in which case reliance upon it would be misplaced and it could not be consideration for the PNLs), *or* it was a real promise to negotiate (in which case reliance upon it was eminently reasonable.)

Indeed, BOA's consideration position only survives if its promise to negotiate included an obligation to exercise good faith in those negotiations. *See, e.g., Source Associates, Inc. v. Valero Energy Corp*., 273 F. App'x 425 (6th Cir. 2008). At issue in *Source Associates* was a distribution agreement requiring neither the manufacturer to provide nor the distributor to purchase product. This Court rejected the argument that the promises were illusory because each promise included "a good-faith promise to use reasonable efforts." *Id.* at 429. Because of that implied obligation, the promises were "neither illusory nor indefinite." *Id*.

Here, either the promise to negotiate was a promise to negotiate in good faith, or it was no promise at all. Instructively, BOA cites to *In re Vargas Realty Enters.,* 440 B.R. 224, 237 (S.D.N.Y. 2010) for the point that a "lender's agreement to engage in settlement negotiations served as valid consideration for PNL." (BOA Br. 31.) But the negotiations in *Vargas* were to be in good faith. 440 B.R. at 237 ("Appellants do not provide details or assert facts that suggest Appellee did not engage in the bargained-for negotiations in good faith").

Trying to obscure the fundamental contradiction at the heart of its reliance argument, BOA strings together several technical arguments. It claims that Corporex could not rely on BOA's promises to negotiate in good faith because the PNLs expressly contradicted any such representations. (BOA Br. 48-49.) But nowhere do the PNLs state that BOA *would not* negotiate with Corporex in good faith, which would be an express contradiction.[4] The PNLs actually provide the opposite: "Lender *will discuss* the Loan with Borrower's and Guarantor's representatives, provided that the following agreements and understandings govern." (Madison PNL, R.232-19, PageID #4624.)

Nor does BOA's promise to negotiate contradict the PNL term giving BOA discretion to terminate negotiations at any time. (Corporex Br. 54-58.) BOA's attempt to distinguish *Dodd v. Dyke Indus., Inc.*, 2008 WL 1884081 (W.D. Ky. Apr. 28, 2008), on this point is unavailing. (BOA Br. 51.) While BOA points to the timing of the representations (BOA Br. 50), the *Dodd* court ignored that timing and analyzed whether the contract terms directly and unambiguously contradicted the

---

[4] BOA's citation to *Davis v. Siemens Med. Solutions USA,* 2007 WL 710133 (W.D. Ky. Mar. 6, 2007 (BOA Br. 51-52.) makes the point. The representation there—that plaintiff's commissions would apply to sales for which he was not "personally and directly responsible"—flatly contradicted a contract term that commissions would cover sales for which he was directly responsible only. *Id.* at *4-5. No such contradiction is present here.

8

misrepresentations. Because they did not, the court found plaintiff's reliance to be reasonable. *Dodd*, 2008 WL 1884081, at *9.

The same problem undercuts BOA's argument that PNLs' merger clause contradicts BOA's previous promises to negotiate in good faith. (BOA Br. 50.) Corporex is not seeking to enforce any substantive pre-PNL loan negotiation, but rather BOA's pre-PNL promises that it would negotiate in good faith. There is no contradiction between the alleged disclaimer of previous *substantive* loan modification negotiations and Corporex's reliance on BOA's promise that it *would continue to negotiate* in good faith.

BOA also argues generally that merger and integration clauses "can justify a conclusion that reliance was *unreasonable as a matter of law*."  (BOA Br. 36, citing *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256 (Ky. Ct. App. 2007)). But BOA's conclusion is based on a distortion of *Radioshack*, which actually held that merger clauses can be "***relevant*** to determine whether a person reasonably relied on the representations," but "***do not preclude*** a tort action for misrepresentation." 222 S.W.3d at 262 (emphasis added.)

Next, BOA refutes an argument Corporex never made. Pointing to two different conclusions reached by respected judges on virtually the same factual record, Corporex argues that the competing conclusions confirm the existence of factual disputes. (Corporex Br. 45-46.) With no answer, BOA rewrites Corporex's

argument and says that the reference to the Florida court's decision is really an argument by Corporex that reasonable reliance "can *never* be resolved at summary judgment." (BOA Br. 53.) It is not.

Finally, even if the PNL contradicted the oral promises to negotiate, Corporex would not be barred from relying on BOA's *written* statements. (Opening Br. 58-60.) *Rivermont Inn, Inc. v. Bass Hotels & Resorts Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003) ("party may not rely on *oral* representations that conflict with written disclaimers to the contrary") (emphasis added); (BOA Br. 49 (quoting *Rivermont Inn*).) Instead of offering arguments to the contrary, BOA attempts and fails to distinguish *Gentry v. Harborage Cottages-Stuart, LLP*, 2008 WL 1803637 (S.D. Fla. Apr. 21, 2008), where plaintiffs relied on prior written documents that allegedly contradicted a later agreement. (BOA Br. 53.) While BOA correctly notes that the agreement in *Gentry* permitted reliance upon prior written documents, BOA is wrong when it says "reliance on prior writings was reasonable *only* because" the writing did so. (BOA Br. 53 (emphasis added).) The *Gentry* court relied on a rule essentially identical to *Rivermont Inn* and specifically found that while plaintiffs' reliance on *oral* misrepresentations was unreasonable,

10

reliance on *written* misrepresentations was not. *Gentry*, 2008 WL 1803637, at *2-3.[5]

## II.    Even if the PNLs are enforceable, the release language does not bar claims and defenses based upon conduct that BOA actively concealed.

BOA contends that Corporex can release claims BOA actively concealed.[6] (BOA Br. 42.) That is not the law, and the cases BOA cites demonstrate why. In each case, the release related to *unknown* claims, not *concealed* ones. *See Leitner v. Hawkins*, 223 S.W.2d 988, 990 (Ky. 1949) ("subsequently maturing" claims can be released; no mention of concealed claims); *White v. Grinfas*, 809 F.2d 1157, 1158-60 (5th Cir. 1987) (release barred future claims based on defects in property that *both* parties were unaware at time of its execution); *Waksman v. Cohen*, 2002 WL 31466417, at *6-7, 11 (S.D.N.Y. Nov. 4, 2002) (release barred future claims where plaintiff failed to review records that would have revealed the conduct before signing release.)

---

[5] Corporex listed these written misrepresentations. (Corporex Br. 45.) BOA responded that Corporex identified no "contradiction[s] between prior writings and the PNLs." (BOA Br. 38 n. 8). ***But that is the point*** – neither the written misrepresentations nor oral ones ***contradict*** the PNLs. So reliance upon them cannot be unreasonable.

[6] Contrary to BOA's claim, Corporex raised this argument below. (Defs.' Mem. in Opp. to Mot. for Summary J. R. 251, PageID #5604 (arguing that "written waiver . . . cannot operate to shield a party from his own fraud"); *id.*, PageID #5611-12.) Indeed, BOA's concealment of its fraud has always been the crux of Corporex's case.

Nor is the scope of the PNLs' release language relevant here, as BOA claims. (BOA Br. 42-45.) BOA argues that the release in *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259 (6th Cir. 1988), did not bar certain claims because it was too "open-ended." (BOA Br. 44.) But this Court expressed no concern about the "open-endedness" of the *Forry* release generally, instead finding that the release did not bar claims of which the plaintiff was unaware as a result of the defendant's active concealment. *Forry*, 837 F.2d at 263.

Similarly, BOA claims that the releases at issue in *Creson v. Carmody*, 222 S.W.2d 935 (Ky. 1949), *Isroff v. Westhall Co.*, 1990 WL 15192 (Ohio Ct. App. Feb. 21, 1990), and *Jacobs v. Jacobs*, 2008 WL 828079 (N.D. Ohio Mar. 26, 2008), were too *narrow,* which BOA claims is the reason why the releases did not apply to certain claims. (BOA Br. 45.) But again, BOA is wrong. In *Creson* and *Isroff*, the releases were held not to apply to concealed, unknown claims ***even though*** the terms of the releases would have encompassed those claims. *Creson*, 222 S.W.2d at 936; *Isroff*, 1990 WL 15192, at *2. And in *Jacobs*, the release did not apply to certain claims because the claim at issue "was not within the scope of the release language," ***and*** because the claim "was not known to, and/or was concealed from the [plaintiffs]." 2008 WL 828079, at *3.

Moreover, the PNLs expressly preserved Corporex's claims: "[n]one of the parties intends to waive any defaults that may exist, or any right or remedy unless

and until it expressly does so in writing." (Madison PNL, R.232-19, Page ID #4625, § 2.) While BOA says that this provision simply preserves "other rights and remedies," it fails to identify those rights and remedies. (BOA Br. 43, n.10.) It nonetheless asserts that this PNL language could not possibly preserve Corporex's good faith and promissory estoppel claims. But BOA has presented nothing—other than its belief that the PNL could not apply to Corporex's claims—to support this argument.

## III.    There is a genuine issue of material fact regarding Madison's default.

Despite the undisputed evidence that BOA told Madison that it need not cure the debt service coverage default (by making a $4.5M principal payment), BOA asserts that there is no triable issue of fact concerning Madison's default. BOA first contends that its statement could not cause the default because the loan documents prohibited oral modifications. (BOA Br. 21.) But Corporex is not claiming BOA *modified* the loan documents; rather, it *breached* the loan documents.

BOA also claims it could not have possibly caused the Madison default because Corporex CEO William Butler told BOA—in the midst of vigorous negotiations—that Corporex could only "muster" an initial principal reduction of $3 million on the Madison loan. (BOA Br. 22) (citing Letter, R.252-3, PageID #6220.) But the record includes Mr. Butler's later sworn statement that Corporex could have made the $4.5 million payment. (Butler Aff., R.251-2, PageID #5635-

13

36, ¶13.) A contradiction between a position taken *in negotiation* and a later sworn

statement raises an issue of fact. *See, e.g.*, *Shockley v. City of Newport News,* 997

F.2d 18, 23 (4th Cir. 1993) (trial court should have considered affidavit that

contradicted prior unsworn admissions); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158

(9th Cir. 1999) (same); *Wade v. Werner Trucking Co.*, 2014 WL 1091707, at *27

n.13 (S.D. Ohio Mar. 18, 2014).

BOA next claims that even if it caused the default, Corporex should not be

excused from later making the $4.5 million principal payment or paying the entire

loan balance at maturity. (BOA Br. 22.) But that ignores the fact that it was BOA

who told Madison *not to make* the payment. And Corporex is not asking to be

excused entirely from paying the loan. Instead, it seeks damages for BOA's

breaches and requests that those damages be set-off against any amount due BOA.[7]

## IV.   BOA incorrectly contends that Realty has no defense to enforcement of the Madison loan.

BOA claims that Realty waived any defense to enforcement of the Madison

loan. (BOA Br. 24.) But Realty's payment obligation is triggered upon a Madison

default only, and therefore, Realty has Madison's defenses. (Madison Guaranty,

R.1-1, Page ID #121-22, §1.)

---

[7] With regard to AC Nielsen, BOA simply ignores AC Nielsen's testimony that it "would have considered" a competitive offer from Corporex. (Serafin Dep., R.251-27, PageID #5865, 75:24-76-5.) Because of BOA's bad faith conduct, however, Corporex could not offer competitive terms.

14

Nor did Realty "waive" its right to assert a defense based upon the implied duty of good faith and fair dealing. (BOA Br. 24-26.) The only way for a guarantor in Ohio to waive that right is through an express waiver of the claim, which is found nowhere in the Madison guaranty. *O'Brien v. Ravenswood Apartments, Ltd.*, 862 N.E.2d 549, 557 (Ohio Ct. App. 2006.) And while BOA seeks to avoid *O'Brien* by claiming its holding is dicta, BOA is wrong. *Id.* ("[w]e *hold* . . . ".)[8]

BOA's argument that, in Ohio, a broad waiver applies to the implied covenant ignores Ohio policy favoring guarantors and strictly construing guaranty agreements against creditors. *Chase Bank of Ohio v. Brookstone Ohio Partnership*, 1990 WL 20104, at *3 (Ohio Ct. App. Mar. 5, 1990) ("guarantors and suretys are favorites of the law and contracts of guaranty will be construed in the guarantor's favor") (citing *Black v. Albery*, 106 N.E. 38 (Ohio 1914)). *See also Liquidating Midland Bank v. Stecker*, 179 N.E. 504, 506 (Ohio Ct. App. 1930). Thus, BOA's

---

[8] BOA claims that "many other jurisdictions 'permit a party to contract out of the duties imposed by the implied covenant' of good faith and fair dealing." (BOA Br. 40.) But the cases BOA cites in support do not say what it says they do. In *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1057 (8th Cir. 2006), the court did not decide the issue. *Id.* ("[w]ithout deciding whether a party can waive the implied covenant of good faith and fair dealing . . ."). And *Aetna Life Ins. Co. v. Anderson*, 848 F.2d 104, 107 n.10 (8th Cir. 1988) did not involve a waiver of the implied covenant. *Id.* (discussing waiver of the "right to contend that the property Aetna received as a result of the foreclosure sale had satisfied" the debt). Nor did *Crown Life Ins. v. Hicks*, No. 93-cv-71482-DT, 1994 WL 16808768 (E.D. Mich. Jan. 7), which dealt with a "discharge" defense waiver. *Id.* at *4.

citation to cases involving broad waivers in lease agreements is misplaced.[9] Nor does BOA's citation to cases involving confidentiality[10] and the waiver of a delay defense[11] make sense.

## V. Disputed issues of material fact exist on Olympic's and Madison's breach of contract claim based upon the implied duty of good faith and fair dealing.

### A. Breach of an express provision of a contract is not a prerequisite of a breach of the implied duty of good faith and fair dealing.

BOA incorrectly claims that breach of an express term of a contract is a prerequisite to a breach of an implied covenant claim. (BOA Br. 46.) Even the district court rejected this argument. *Bank of Am., N.A. v. Corporex Realty & Inv., LLC,* 875 F. Supp. 2d 689, 700 (E.D. Ky. 2012). And for good reason. In *Littlejohn v. Parrish*, 839 N.E.2d 49 (Ohio Ct. App. 2005)—the leading Ohio case on the subject—the court permitted a borrower to maintain a claim for breach of the implied duty of good faith without pleading a separate breach of a specific provision, since the parties "were required to deal reasonably with each other." *Id.*

---

[9] *Bilbaran Farm, Inc. v. Bakerwell, Inc.*, 993 N.E.2d 795 (Ohio Ct. App. 2013) and *Bushman v. MFC Drilling Inc.*, 1995 WL 434409 (Ohio Ct. App. July 19, 1995).

[10] *State ex rel. Wallace v. State Med. Bd. of Ohio*, 732 N.E.2d 960 (Ohio 2000).

[11] *Buckeye Fed. Sav. & Loan Ass'n v. Guirlinger*, 581 N.E.2d 1352, 1355 (Ohio Ct. App. 1991).

at 54, *id.* ("public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other").[12]

BOA's reliance on *Lucarell v. Nationwide*, 44 N.E.3d 319 (Ohio Ct. App. 2015) and *Gianetti v. Teakwood, Ltd.*, 2016-Ohio-213 (Ohio Ct. App. Jan. 21) is misplaced. Neither case says that a breach of contract claim is a pre-requisite to a claim based upon the implied duty of good faith and fair dealing. Instead, both cases merely note that a claim for breach of the duty of good faith and fair dealing exists as part of a breach of contract claim. *Lucarell*, 44 N.E.3d at 334; *Gianetti*, at ¶35.

### B. BOA acted inconsistent with its contractual rights.

BOA claims that it exercised its contractual right to foreclose and, therefore, cannot be liable for breaching the implied duty of good faith and fair dealing. (BOA Br. 42.) But BOA did not simply exercise its right to foreclose. It entered into sham negotiations in an effort to avoid Corporex's rights of first refusal, *then foreclosed and immediately sold two of the loans at deep discounts*. There is no contractual right to act in a commercially unreasonable manner. Ohio Rev. Code § 1301.304; *Florence Urgent Care v. Healthspan, Inc.,* 445 F. Supp. 2d 871, 880 (S.D. Ohio 2006) ("lack of honesty" precluded finding in Defendants' favor on

---

[12] *Littlejohn* relied, in part, on other Ohio decisions, the law of other jurisdictions, and The Restatement of the Law 2d, Contracts (1981), Section 205.

good faith and fair dealing claim); *Littlejohn,* 839 N.E.2d at 54. ("Any agreement . . . has an implied covenant of good faith and fair dealing that requires not only honesty but also ***reasonableness in the enforcement of the contract***") (emphasis added).[13]

BOA's citation to *Panagouleas Interiors, Inc. v. Silent Partner Group, Inc.,* 2002 WL 441409 (Ohio Ct. App. Mar. 22, 2002) is misplaced. In *Panagouleas,* a mortgagor argued that the mortgagee breached a duty of good faith and fair dealing by failing to provide the mortgagor with a firm payoff amount. *Id.* at *7. The Court held that, under the note and mortgage, the mortgagee was not required to provide a firm payoff amount because the mortgagor was in default of his loan obligations at the time. Here, however, ***prior to any alleged default,*** BOA induced Corporex into entering into loan extension negotiations with BOA and into foregoing other financing opportunities, all so BOA could avoid Corporex's rights of first refusal.

## VI.    There exist disputed issues of material fact regarding Olympic's promissory estoppel claim.

### A.    The Parol Evidence Rule does not bar Olympic's counterclaim.

BOA claims that the parol evidence rule prevents Olympic from relying on BOA's promise to negotiate in good faith because the loan documents (not the

---

[13] BOA baldly asserts that it did "nothing to interfere with Olympic's performance of its loan obligations." (BOA Br. 64). And yet, when Olympic attempted to satisfy its obligations by refinancing with another bank, BOA interfered, representing that it could offer better terms.

PNLs) cover the same subject matter as BOA's promise to negotiate in good faith. (BOA Br. 49.) But the loan documents do not address loan negotiations, other than saying that any extension or modification must be in a writing signed by all parties. An oral promise *to negotiate* does not expressly contradict those terms.

None of BOA's cases require a different result. In each, the oral promise expressly contradicted written contract terms. *Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996) (alleged oral terms involved "precisely the same subject matter as the various applicable written agreements"); *Woods v. Capital Univ.*, 2009 WL 3465827, *16 (Ohio Ct. App. Oct. 27, 2009); *Cuthbert v. Trucklease Corp.*, 2004 WL 1879023, *5 (Ohio Ct. App. Aug. 24, 2004). Here, BOA's *promise to negotiate* in good faith is not addressed in the loan documents.

### B. The reasonableness of Olympic's reliance on BOA's promise to negotiate is a disputed question of material fact.

BOA also claims Olympic did not reasonably rely on BOA's *promise to negotiate in good faith* because Olympic knew the loan had a specific maturity date and that negotiations were subject to final or additional approval. (BOA Br. 52.) But Olympic's promissory estoppel claim is based on both BOA's promise to negotiate and BOA's misrepresentation that it could offer better terms than the alternate financing obtained by Olympic. (Heekin Depo., R.251-5, PageID #5660, 106:10-16; Butler Depo., R.251-6, PageID #5683, 62:9-63:20.) Corporex had

19

every reason to believe BOA would fulfill both promises (no contrary evidence exists on BOA's second promise), and Olympic's reliance was therefore reasonable.

Moreover, a party making false promises cannot benefit from those misstatements. *Meyers v. Monroe*, 226 S.W.2d 782, 785 (Ky. 1950) (a "defrauding party cannot escape on the ground that the complaining party should not have trusted him, or was negligent in so doing"); *Harralson v. Monger*, 206 S.W.3d 336, 340 (Ky. 2006). Allowing BOA to avoid liability stemming from its own bad faith conduct would conflict with this well-settled principle.

Again, BOA's caselaw is irrelevant. In *McCroskey v. State*, 456 N.E.2d 1204 (Ohio 1983) (BOA Br. 51), the court found "no proof" of a contract or even promises by the defendant. *Id.* at 1205-06. And *Current Source, Inc. v. Elyria City Sch. Dist.*, 813 N.E.2d 730 (Ohio Ct. App. 2004), focused on whether a school board made a promise to the plaintiff—not whether the reliance was reasonable. *Id.* at 737. Here, of course, it is undisputed that BOA promised to provide better financing than another bank and that Olympic reasonably relied in passing on the other available financing.

Nor do BOA's "done deal" cases help. In *Atkinson v. Akron Bd. of Edn.*, 2006 WL 551551 (Ohio Ct. App. Mar. 8, 2006) the court found that an employee's reliance on a promise that his contract was a "done deal" was not justified because

20

plaintiff "had substantial knowledge" of the circumstances surrounding his employment. *Id.* at *5-6. Here, by contrast, Corporex did not have any knowledge—let alone "substantial knowledge"—of BOA's intent to negotiate in bad faith. And in *Mansfield Square, Ltd. v. Big Lots, Inc.*, 2008 WL 5159930 (Ohio Ct. App. Dec. 9, 2008), the court refused to enforce a "done deal" promise, finding that any reliance on that promise was unreasonable where the term sheets made clear that the lease would not be final until reduced to a written lease. *Id*. Here, Corporex is not seeking to enforce the term sheets but, rather, BOA's promises to negotiate and provide better financing.  *Corporex*, 875 F. Supp. 2d at 702. Indeed, there was no evidence in *Mansfield Square* that the defendant-tenant concealed anything from the landlord during negotiations, whereas here there is ample evidence that BOA concealed its true intent.

### C.    There was ample evidence from which a jury could conclude that BOA determined to sell the loans in the third quarter of 2010.

BOA claims that there is no evidence that it "conclusively determined" to sell the loans before June 2011. (BOA Br. 11, 53-55.) But what BOA really offers are competing interpretations of its internal communications. Those interpretations are for a jury, not a district court. And based on the bad faith evidence described above and in the attached Exhibit, a jury could easily reject BOA's interpretation.

BOA also contends that "nothing indicates that BOA's only option was to sell" the loan (even though BOA selected that option). (BOA Br. 55.) But, again,

Corporex need not establish *conclusively* that BOA's only option was to sell the loan. It simply must present sufficient evidence for a jury to find that selling the loan was the decision that BOA had made while at the same time pretending to negotiate. Corporex has done that.

## VII.  The trial court erred in denying Corporex's motion for leave to amend.

BOA argues that Corporex waited too long to file its motion for leave to file third amended counterclaims and that BOA would have been prejudiced by the amendment. (BOA Br. 55-61.) BOA is wrong on both points, and the district court abused its discretion in denying leave to amend.

### A.  Corporex acted diligently.

BOA offers numerous arguments that Corporex was not entitled to wait to file its fraud claims until it had a sufficient factual basis to do so (BOA Br. 56-60), none of which bears up to scrutiny.

*First*, BOA contends that the district court "recognized that [Corporex's] theory rested fundamentally on alleged fraud" in June 2012. (BOA Br. 58.) But whatever the district court's view of Corporex's theory as of June 2012 was, at that time, virtually no discovery had occurred, and Corporex would have lacked anything close to a sufficient factual basis for its fraud and misrepresentation claims. Indeed, six months later—at the December 14, 2012 amendment deadline—BOA had produced only 2.8% of its total document production, and had

22

produced no document related to its loan modifications with other borrowers. (Corporex Br. 68-69.) And Corporex had to pull teeth to get much of the evidence that it did—a fact that BOA altogether ignores. Corporex not only had to oppose motions to bifurcate discovery and quash subpoenas, but also was forced to file two motions to compel. (Corporex Br. 54.)

*Second*, BOA argues Corporex should have at least filed the negligent misrepresentation claim earlier because fraudulent intent is not required for that claim. (BOA Br. 57.) That misses the point. Corporex did not understand the *nature* of BOA's *scheme* until BOA's court-ordered production of documents related to its loan modifications with other borrowers on June 17, 2014. That production consisted of nearly 200,000 pages of documents and demonstrated that BOA lied to Corporex by stating that it could not structure a deal with certain terms when it routinely included those same terms in deals with other borrowers.

*Third*, BOA asserts that Corporex had already alleged intentional misrepresentations before the amendment deadline in its Second Amended Counterclaim, which was allegedly "rife with fraud allegations." (*Id*.) But BOA cites to only a *single paragraph* of Corporex's Second Amended Counterclaims to demonstrate just how "rife with fraud allegations" those Counterclaims were. (*Id*.) And regardless, Corporex acknowledges that it long *suspected* BOA's fraud, but

waited until it had a sufficient factual basis to allege claims based on BOA's misrepresentations. (Corporex Br. 68.)

*Fourth*, BOA argues that Corporex's motion for leave to amend was based solely on evidence acquired before June 2014. (BOA Br. 58.) This is untrue. Corporex discussed the documents related to modifications with other borrowers in its motion for leave (Motion, R.221-1, PageID #4017-18), its corresponding reply (Reply, R.227, PageID #4226-27), and its objections to the magistrate's report and recommendations. (R&R, R.239, PageID #5481-82.)

*Fifth*, BOA contends that because fraudulent intent can be "alleged generally" under FRCP 9(b), Corporex should have asserted its fraud and misrepresentation claims without factual or documentary support. (BOA Br. 58-9.) But as discussed in Corporex's opening brief, Corporex should not be penalized for BOA's conduct in stonewalling legitimate discovery. (Corporex Br. 54.) Nor was there anything wrong with Corporex prudently waiting until the factual basis develops before bringing a fraud claim. (Corporex Br. 69); *Ohio Willow Wood Co. v. ALPS S., LLC*, 2010 WL 522829, at *3 (S.D. Ohio Feb. 8, 2010).

BOA's citation to *Boulton v. Swanson*, 795 F.3d 526 (6th Cir. 2015), does not change the analysis. There, this Court upheld the district court's denial of the plaintiff's motion for leave to amend his complaint to add a new defendant, where the plaintiff had always been aware of the new defendant's involvement. *Id.* at

537-38. Unlike here, however, the *Boulton* plaintiff brought 42 U.S.C. § 1983

claims, which are not subject to the heightened pleading standard under FRCP 9.

*Id.* Further, the *Boulton* plaintiff sought leave to join an entirely new defendant;

here, Corporex sought to add new *claims* against a pre-existing party (and, at that,

claims that would not have required any substantial additional discovery, as

discussed below.) *Id.*

    *Sixth*, BOA asserts that the district court's stay of discovery from September

2013 to February 2014 is irrelevant and did not preclude Corporex from earlier

seeking leave to amend. (BOA Br. 59.) Again, BOA is wrong. Only *after* the stay

was lifted on June 17, 2014 did BOA produce the roughly 200,000 pages of

documents related to its modifications with other borrowers (and, again, only

because the district court ordered the production). Immediately after its prompt

review of that production, Corporex filed its motion for leave. Were it not for the

stay, Corporex could have received and reviewed those documents—and thus filed

its motion—much earlier.

### B. BOA will not be prejudiced by the amendment.

    BOA also argues the amendment would be prejudicial because it would have

to conduct discovery on punitive damages, "unforeseeable" damages, and "new

elements" related to Corporex's claims. (BOA Br. 60-1.) But BOA overstates the

need for that discovery.

*First*, BOA would not need any additional discovery related to punitive damages. Under Kentucky law, "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, ***fraud*** or malice." K.R.S. 411.184(2) (emphasis added). Thus, no additional proof, over and above the proof needed to establish the fraud claim in the first instance, would be necessary to prove punitive damages.

*Second*, BOA's contention that it would need to conduct additional discovery on "unforeseeable" damages is meritless. Nowhere has Corporex argued that its fraud and misrepresentation claims open up a new realm of "unforeseeable" damages—Corporex has already outlined its damages theory through its bad faith and promissory estoppel claims, and its compensatory damages theory remains the same for its fraud and misrepresentation claims.

*Third*, the "new elements" of Corporex's fraud and misrepresentation claims would not require extensive new discovery. BOA already took discovery on Corporex's fraudulent inducement affirmative defense, and even briefed the issue in summary judgment in both this case and the Florida case. (Reply, R.227, PageID #4227-28.) Further, the primary "new element" associated with the fraud claim (as opposed to the bad faith and promissory estoppel claims already before the Court) is BOA's ***own*** intent. Putting aside the fact that BOA has already conducted

26

discovery on that issue, there is no reason that BOA would need to conduct discovery of its *own knowledge*.

## CONCLUSION

For the reasons given above and in its opening brief, this Court should reverse the trial court's grant of summary judgment and remand for trial.

Respectfully submitted,

/s/ John B. Nalbandian
Earl K. Messer
Robert B. Craig
John B. Nalbandian
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Phone:  (513) 381-2838
Fax:     (513) 381-0205
Email: messer@taftlaw.com
          craigr@taftlaw.com
          nalbandian@taftlaw.com

Robert L. Rocke
Raul Valles
Rocke, McLean & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, FL  33629
Phone:  (813) 769-5600
Fax:     (813) 769-5601
Email: rrocke@rmslegal.com
          rvalles@rmslegal.com

*Attorneys for the Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE

The undersigned, pursuant to Fed. R. App. P. 32(A)(7)(B) and (C), certifies

that this brief has 6,926 words and complies with the type-volume limitation.


/s/John B. Nalbandian

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed in the Court's CM/ECF system

on April 11, 2016, and that this system will serve counsel of record.

/s/John B. Nalbandian

# EXHIBIT A

15939644.1







**COMMUNICATIONS WITH CORPOREX**

**2010** MAY | AUG | SEP | OCT | NOV | DEC

**8/11/09**
BOA/Corporex meeting – BOA says we'll work with you to modify the loans in 12 months.[1]

**5/25/10**
BOA/Corporex meeting – BOA tells Corporex that it can work around the debt service coverage issue.[2]

**8/27/10**
Corporex/BOA call – BOA tells Corporex not to pursue Olympic refinance; BOA treating three loans together and could do better.[4]

**9/8/10**
Corporex first proposal.[5]

**10/25/10**
BOA letter – make $4.54M paydown.[9]

**10/27/10**
BOA/Corporex call – Cole confirms that 10/25 letter is just matter of procedure; BOA will respond to Corporex's September 8 proposal.[10]

**11/1/10**
BOA first proposal.[13]

**11/11/10**
Corporex 2nd proposal.[14]

**11/16/10**
Corporex/BOA call – loans being moved to SAG; don't pursue Olympic refinance; SAG has more flexibility.[15]

**12/13/10**
Corporex/BOA meeting – as a condition to further negotiations, Madison signs PNL.[19]

**INTERNAL COMMUNICATIONS**

**8/26/10**
Teresky email – "get ours first."[3]

**9/22/10**
Roudebush email – "start the transfer paperwork."[6]

**9/27/10**
Bauman email about BOA proposal – "Just like we talked though, can't see CPX agreeing to any of it."[7]

**9/30/10**
Cole email about BOA proposal – "Don't think this is a solution – more an attempt to show that we thought about it . . . ."[8]

**10/27/10**
Cole email regarding BOA 10/25/10 letter, noting that "message" to Corporex is that BOA was still reviewing a "global restructure"; Cole anticipates Corporex won't pay $4.5m.[11]

**10/31/10**
SER Report on Madison – "Is extension likely?"[12]

**11/24/10**
Gnapp email – "OUT" – "Credit exposure is unacceptable at any level."[16]

**11/30/10**
Loans transferred to SAG.[17]

**December –**
BOA knew sale not possible until default.[21]

**12/1/10**
Andren email – "We will go straight to litigation and foreclosure if they do not respond."[18]

**12/14/10**
Andren email – "We are projecting foreclosures, both Madison & Tampa."[20]



**COMMUNICATIONS WITH CORPOREX**

**JAN 2011** — **FEB** — **MAR** — **APR** — **JUN** — **OCT**

**TAMPA/OLYMPIC MATURE**

**MADISON MATURES**

**INTERNAL COMMUNICATIONS**

**1/10/11**
Andren agrees to 3-year extension, with two 1-year options, on Madison; she needs $2.16M paydown on Tampa, and doesn't need to increase interest rates.[22]

**2/24/11 and 2/25/11**
Andren email – she needs PNLs in order to continue negotiating all three loans; Tampa and Olympic signed PNLs.[24]

**2/22/11**
Fuszard email – "please ensure that we initiate these conditional changes & commencement of our remedies at the earlier of 3/15 or our conclusion that this sponsor simply will not perform."[23]

**3/1/11**
Olympic and Tampa default letters; Andren says no Madison term sheet until agreement on Tampa.[25]

**3/15/11**
Andren reneges on Madison 3-year extension.[26]

**4/5/11**
Term sheets signed; provide that existing loan documents will be used except as "expressly modified by this term sheet."[27]

**6/10/11**
Andren email – she instructed counsel "to immediately start the suits of the guarantor."[28]

**6/10/11**
Andren email – "Modification documents for Tampa and Olympic will be sent to you next week."[29]

**6/23/11**
Szorik letter – Corporex cannot agree to terms in proposed modification documents; do not conform with the agreed-upon term sheets.[30]

**6/30/11**
Lawsuit filed.[31]

[1] Heekin Depo., R.251-5, PageID #5657-5658, 87:19-89:10.

[2] *Id.,* PageID #5659, 97:2-21.

[3] Email, R.251-9, PageID #5762-5763.

[4] Heekin Depo., R.251-5, PageID #5660, 106:10-16; Butler Depo., R.251-6, PageID #5683, 62:9-63:20.

[5] Butler Depo., R.251-6, PageID #5684, 77:9-22.

[6] Roudebush Depo., R.251-8, PageID #5753-5755, 95:22-103:15.

[7] Cole Depo., R.251-7, PageID #5714-5715, 115:23-117:22.

[8] Email, R.251-11, PageID #5767.

[9] Letter, R.232-16, PageID #4612-4614.

[10] Heekin Depo., R.251-5, PageID #5664-5665, 140:9-142:21.

[11] Email, R.251-13, PageID #5772-5775; Cole Depo., R.251-7, PageID #5722, 146:15-19.

[12] Katunas Depo., R.232-39, PageID #4840-4841, 133:21-134:20.

[13] Heekin Depo., R.251-5, PageID #5665-5666, 142:18-21; 144:15-18, 147:2-14.

[14] Letter, R.251-14, PageID #5775-5777.

[15] Heekin Depo., R.251-5, PageID #5667, 150:8-24.

[16] Email, R.251-15, PageID #5778.

[17] Andren Depo., R.232-44, PageID #5036, 119:24-121:9.

[18] *Id.*, PageID #5036-5037, 119:21-123:24.

[19] *Id.*, PageID #5036, 119:21-121:23; Letter, R.232-19, PageID #4623-4628.

[20] Andren Depo., R. 232-44, PageID #5040-5041, 136:19-138:24.

[21] Katunas Depo. R.251-16, PageID #5780, 211:3-212:11.

[22] Heekin Depo., R.251-5, PageID #5668, 165:1-166:15.

[23] Fuszard Depo., R. 232-37, PageID #4749, 190:22-192:9.

[24] Email, R.232-22, PAGEID #4639-4641; Olympic PNL, R.232-20, Page ID #4630; Tampa PNL, R.232-21, PageID #4635.

[25] Letters, R. 232-23, PageID #4642-4652.

[26] Heekin, Depo., PageID #5670-5671, 196:11-198:24.

[27] *Id*., Page ID#5672, 209:24-210:1; R. 232-24, PageID #4654-4656.

[28] Email, R.251-20, PageID #5809.

[29] Heekin Depo., R.232-42, PAGEID #4926, 217:12-25.

[30] Heekin Depo., R.251-5, Page ID #5673, 230:1-20.

[31] Complaint, R.1, PageID #1-10.